IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| KANAY MUBITA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. CV07-62-S-EJL |
| | ) | |
| vs. | ) | **MEMORANDUM DECISION** |
| | ) | **AND ORDER** |
| LATAH COUNTY JAILERS, | ) | |
| OFFICER SCOTT [DOE], | ) | |
| SHERIFF WAYNE RAUSCH, | ) | |
| LT. JIM LOYD, AND OTHERS, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Pending before the Court in the above-entitled matter are: 1) Plaintiff's Motion for Protective Order (Docket No. 54); 2) Defendants' Motion for Release of Medical Records from Idaho Department of Corrections (Docket No. 56); 3) Defendants' Second Motion to Modify Pretrial Scheduling Order (Docket No. 58); 4) Plaintiff's Motion to Continue (Docket No. 60); 5) Defendants' Motion for Summary Judgment (Docket No. 62); Plaintiff's Motion for Extension of Time to File (Docket No. 64).

The Notice to Pro Se Litigants regarding Summary Judgment Rule Requirements was mailed to Plaintiff.  Docket No. 63.  Plaintiff filed multiple responses to the motion for summary judgment.  See Docket Nos. 65, 66, and 68.

**ORDER  1**

Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record.  Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, these matters shall be decided on the record before this Court without oral argument.

## Background

Plaintiff Kanay Mubita's prisoner pro se Complaint was conditionally filed on February 28, 2007 (Docket No. 3).  The Court reviewed the initial Complaint and determined that Plaintiff had stated colorable civil rights claims, however, Plaintiff was put on notice that it was unclear whether he had exhausted his administrative remedies on his claims.  Initial Review Order, Docket No. 7.  Plaintiff was granted leave to file an amended complaint or voluntarily dismiss his lawsuit.  Id.  On April 24, 2007, Plaintiff filed his First Amended Complaint, Docket No. 9.  A Second Amended Complaint was filed on November 29, 2007, Docket No. 21.  A Third Amended Complaint was filed on April 24, 2008 (Docket No. 25)

Plaintiff alleges that while he was incarcerated at the Latah County Jail from March of 2006 to June 5, 2006, Defendants did not allow him to shower, make phone calls to his family or attorney, provide pencils and papers to file a grievance, denied him medical care for his ear, subjected him to the noise of inmate Kelly Rausch, and forced Plaintiff to clean his cell with disinfectant that bothered his respiratory system.  Plaintiff has named numerous jail personnel and the county sheriff as Defendants.

**ORDER  2**

Defendants deny that Plaintiff's constitutional rights were violated and have moved for summary judgment on the claims based on the records of the jail and affidavits of jail personnel.

**Motion for Summary Judgment**

1. <u>Standard of Review</u>

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure.  Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial.  See, <u>Celotex Corp v. Catrett</u>, 477 U.S. 317, 322 (1986).  If the non-moving party fails to make such a showing on any essential element, "there can be no `genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  <u>Id.</u> at 323.[1]

---

[1]   <u>See also</u>, Rule 56(e) which provides, in part:

**ORDER  3**

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975) (quoting First Nat'l Bank v. Cities Serv. Co. Inc., 391 U.S. 253, 289 (1968)). The Ninth Circuit cases are in accord. See, e.g., British Motor Car Distrib. v. San Francisco Automotive Indus. Welfare Fund, 882 F.2d 371 (9th Cir. 1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

Id. at 374 (citation omitted).

The party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but ... must set forth specific facts showing that there is

---

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

**ORDER  4**

a genuine issue for trial." Fed.R.Civ.P. 56(e); see Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 585-88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir.1995).

Of course, when applying the above standard, the court must view all of the evidence in a light most favorable to the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Hughes v. United States, 953 F.2d 531, 541 (9th Cir. 1992).

2.  Facts

Plaintiff was housed in the Latah County Jail from December 7, 2005 until June 5, 2006.  Plaintiff was charged and convicted of a total of eleven counts of Transferring Bodily Fluids Which May Contain the Human Immunodeficiency Virus in violation of Idaho Code § 39-608.  State of Idaho v. Mubita, 188 F.3d 867 (Idaho 2008).  Plaintiff was sentenced to four months determinate and four years indeterminate for each count, to be served consecutively.  Id.  On June 5, 2006, Plaintiff was transferred to the Idaho Department of Corrections where his is still incarcerated.  Plaintiff's conviction was affirmed by the Idaho Supreme Court.  Id.

Plaintiff was placed in the general population of the jail when he arrived.   In Block A of the jail he had a shower and telephone readily accessible for his use at any time.

On January 24, 2006, Plaintiff was moved to cell C-1 where there are four individual cells that open to a common day room where a shower and phone are available.

**ORDER  5**

While in cell C-1, inmates have shower and telephone access from 6:00 a.m. to 11:00 p.m. on Sunday through Thursday and anytime on Friday and Saturday.  On February 27, 2006, Plaintiff was involved in a verbal altercation with a cellmate.  After a second verbal altercation, Plaintiff's cellmate was moved to another cell.

After Plaintiff was convicted, he was held in a single person cell, C-3, from April 23, 2006 to May 1, 2006.  Placement in cell C-3 was the result of continued behavior problems and altercations with other inmates.  The placement in the single person cell was needed to maintain order, security, and the safety of all inmates at the Latah County Jail.  The inmates in cell C-3 are given the option to come out of their cells for a minimum of one hour each day to shower and use the phone.  An inmate is not forced to leave his cell.  A log is kept of inmates leaving and returning to their cells.  The area with the shower and phone is called the "library."

Between May 1, 2006 and May 15, 2006, Plaintiff was again housed in cell C-1.  Due to further altercations, Plaintiff was returned to cell C-3 on May 15, 2006.  Plaintiff continued to be housed in cell C-3 until he was transfered to the Idaho Department of Corrections on June 5, 2006.

The jail keeps booking information on each inmate noting medicine provided, moves, out of an hour, refusal to go out for an hour, medical treatment, etc.  See Exhibit C of Affidavit of Lt. Jim Loyd, Docket No. 62-6.

While housed in cell C-3 from April 23, 2006 to May 1, 2006, the jail logs indicate that Plaintiff left his cell and had access to a shower and phone in the "library" on

**ORDER  6**

April 26, 2006; April 28, 2006; April 29, 2006; and May 1, 2006.  Id.  The jail logs

indicate that between May 15, 2006 and June 5, 2006, Plaintiff left his cell and had access

to a shower and a phone on May 16, 2006; May 19, 2006; May 20, 2006; May 21, 2006;

May 22, 2006; May 23, 2006; May 24, 2006; may 25, 2006, may 27, 2006; May 28,

2006; May 29, 2006; May 30, 2006; May 31, 2006; June 1, 2006; June 2, 2006; June 3,

2006; and June 4, 2006.  Id.

It is the jail policy to provide pencils and paper through the commissary system.

Indigent inmates are allowed certain commissary items once a week at no cost including

one pencil, ten sheets of writing paper and five pre-stamped letter size envelopes.  All

commissary purchases and indigent commissary requests are signed by the inmates and

are maintained by the jail.  See Exhibit H of Affidavit of Lt. Jim Loyd,  Plaintiff's

commissary purchases and requests, Docket No. 62-11.   Plaintiff requested and received

a pencil, paper and stamps as a indigent commissary request on May 1, 2006 and May 23,

2006.  Id.  The jail records indicate that Plaintiff's attorney visited Plaintiff while he was

housed in cell C-3.

The jail records do not indicate that a Kelly Rausch was being held in the Latah

County Jail during the time Plaintiff was being held in cell C-3.  No noise complaints

were filed by Plaintiff during this time.  The jail records do not indicate any grievances

were filed by Plaintiff.

Inmates housed at the Latah County Jail are required to clean their own cells.  The

cells are ventilated with central air conditioning and heating.  The cleaner used by

**ORDER  7**

inmates is mild and diluted with water before being given to inmates.  The cleaner is mild

so it could not harm a person if it was ingested by an inmate who attempted to harm

himself.  No written complaints were received from the Plaintiff regarding the cleaner.

No medical complaints were filed by Plaintiff regarding a respiratory condition or

irritation caused by any cleaners.

On or about February 8, 2006, the Latah County Deputy Prosecutor Michell Evans

requested that the jail block certain phone numbers to alleged victims in the pending

criminal charges.  Docket No. 65-1.  There is no evidence that the blocked phone

numbers included the family or the attorney of Plaintiff.

The Latah County Jail conducts regular medical assessments of inmates and keeps

medical records of requests for medical/dental attention and the dispensing of medicine.

See Exhibit F. Of Affidavit of Lt. Jim Loyd, Docket No. 62-9.   The medical records

indicate Plaintiff's medical situation was assessed in December 2005 and March 14,

2006.  Id.  Plaintiff filed a medical request form on April 14, 2006 and was seen and

prescribed Pepcid AC.  Id.  Plaintiff was rechecked and it was determined he no longer

needed the medicine so it was stopped on May 5, 2006.  Id. On May 26, 2006, Plaintiff

completed another medical request form complaining of a "very bad ear."  Id.  Plaintiff

was seen by the jail's registered nurse on May 30, 2006 where he complained about his

ear and swollen neck.  Id.  Nurse recommended a prescription for an antibiotic for

Plaintiff's ear and the jail records indicate the antibiotic was provided from June 1, 2006

until Plaintiff's transfer out of Latah County Jail. Id.

**ORDER  8**

Plaintiff claims the jail records have been fabricated and that he was not allowed pencil and paper to file any grievances.  No additional evidence of medical claims or complaints have been provided by Plaintiff.

3.  <u>Analysis</u>

    A.  <u>Failure to exhaust administrative remedies</u>

As discussed in the Initial Review Order, it appears Plaintiff has failed to exhaust his administrative remedies and that the pending claims should all be dismissed.  Pursuant to the Prison Litigation Reform Act of 1995 (PLRA),[2] a prisoner is required to exhaust all of his administrative remedies within the prison system before he can bring a civil rights lawsuit challenging the conditions of his confinement.  42 U.S.C. § 1997e(a).  "Proper" exhaustion of administrative remedies is required, meaning that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court."  <u>Woodford v. Ngo</u>, 548 U.S. 81, 88 (2006).  The test is whether the administrative remedies were exhausted when the complaint was filed.  <u>Vaden v. Summerhill</u>, 449 F.3d 1047, 1051 (9th Cir. 2006); <u>McKinney v. Carey</u>, 311 F.3d 1198 (9th Cir. 2002).  The complaint must be dismissed without prejudice even if the administrative remedies are exhausted while the litigation is pending.  <u>Id.</u>

    "There is no question that exhaustion is mandatory under the PLRA and that

---

[2]  110 Stat. 1321-71, *as amended*, 42 U.S.C. § 1997e, *et seq*.

**ORDER  9**

unexhausted claims cannot be brought in court." <u>Jones v. Bock</u>, 549 U.S. 199, 211 (2007).  The <u>Jones v. Bock</u> Court noted that the important policy concern behind requiring exhaustion is that it "allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." <u>Id.</u> at 204.

Where there is an "informal[]" and "relative[ly] simpl[e]" prison grievance system, prisoners must take advantage of it before filing a civil rights complaint. <u>Woodford v. Ngo</u>, 548 U.S. at 103.  In <u>Woodford v. Ngo</u>, the prisoner had filed his grievance within six months of the incident at issue, rather than within fifteen days as required by the California Prison grievance system. <u>Id.</u> at 86-87.  The Supreme Court rejected the Ninth Circuit's determination that the prisoner "had exhausted administrative remedies simply because no such remedies remained available to him." <u>Id.</u> at 87.

Failure to exhaust remedies is an affirmative defense. <u>Jones v. Bock</u>, 549 U.S. 199, 210 (2007).  In deciding whether to dismiss for failure to exhaust administrative remedies, a court may look beyond the pleadings and decide disputed issues of fact. <u>Id.</u> at 1119-20.  Defendants bear the burden of proving failure to exhaust. <u>Brown v. Valoff</u>, 422 F.3d 926 (9th Cir. 2005).

Where a court (1) determines that a civil rights complaint contains both exhausted and unexhausted claims, and (2) determines that "the unexhausted claims are not intertwined with the properly exhausted claims," the court should dismiss the unexhausted claims and allow the inmate to proceed on the exhausted claims. <u>Lira v. Herrera</u>, 427 F.3d 1164, 1175 (9th Cir. 2005).  "On the other hand, when a plaintiff's

**ORDER  10**

'mixed' complaint includes exhausted and unexhausted claims that are closely related and difficult to untangle, dismissal of the defective complaint with leave to amend to allege only fully exhausted claims is the proper approach." Id. at 1176.

In this case, Defendants raised the affirmative defense of failure to exhaust remedies in their Answer and Amended Answer (Docket Nos. 33 and 36).  The Affidavit of Lt. Jim Loyd indicates the jail records were searched and no grievances were filed by the Plaintiff regarding any of the claims presented in this lawsuit.

 Plaintiff argues he was unable to file a grievance due to the fact Defendants did not allow him a pencil or paper.  The commissary records of the jail which are signed by Plaintiff do not support this argument. Plaintiff received pencil and paper twice in May 2006 as indigent commissary requests.  Therefore, Plaintiff had access to a pencil and paper in which to file a grievance and failed to do so.  Accordingly, the claims should be dismissed since Plaintiff failed to exhaust his available administrative remedies and he is no longer housed at the Latah County Jail so attempt to cure the defect in his pleadings would be untimely.


B.  Merits of Claims

Even assuming for purposes of the motion for summary judgment that Plaintiff was unable to file any grievances, the Court finds Plaintiff has failed to establish a genuine issue of material fact exists and summary judgment should be granted in Defendants favor.

**ORDER  11**

Plaintiff brings his claims under 42 U.S.C. § 1983, the civil rights statute.  To state a claim under § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law.  Crumpton v. Gates, 947 F.2d 1418, 1420 (9th Cir. 1991).

To state a claim under the Eighth Amendment, a plaintiff must show that he is incarcerated "under conditions posing a substantial risk of serious harm," or that he has been deprived of "the minimal civilized measure of life's necessities."  Farmer v. Brennan, 511 U.S. 825, 834 (1994) (internal citation omitted).  A plaintiff must also show that Defendants were deliberately indifferent to plaintiff's needs.  Deliberate indifference exists when an official knows of and disregards an unconstitutional condition or when the official is aware of facts from which the inference could be drawn that a risk of harm or violation exists, and actually draws the inference.  Farmer v. Brennan, 511 U.S. at 837.

Defendants argue that Plaintiff has not established any constitutional claims and that the Defendants are entitled to qualified immunity.  Police officers and jail staff are entitled to "qualified immunity" for their actions within the scope of their employment "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982).  The purpose of qualified immunity is to "avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment."  Saucier v. Katz, 533 U.S. 194, 200, 202 (2001).  On the other hand, this privilege allows redress where clear wrongs are caused by state actors.  Id.  "The

**ORDER  12**

privilege is an immunity from suit rather than a mere defense to liability, and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Id. at 200-01.  "As a result, [courts] have repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation," long before trial.  Id. at 201, see also Act Up!/Portland v. Bagley, 988 F.2d 868, 873 (9th Cir. 1993) (citing Hunter v. Bryant, 502 U.S. 224 (1991)).

The initial question in determining whether an officer is entitled to qualified immunity is whether, taken in the light most favorable to the party asserting injury, the facts alleged show that the defendant's conduct violated a constitutional right.  Saucier v. Katz, 533 U.S. 194, 201, (2001); Billington v. Smith, 292 F.3d 1177, 1183 (9th Cir. 2002). If not, "there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201. If, however, a violation could be established under the facts presented, the next step is to determine whether the right was "clearly established."  Id. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202. "The question is what the officer reasonably understood his powers and responsibilities to be, when he acted, under clearly established standards." Id. at 208.  Plaintiff bears the burden of establishing the rights violated were "clearly established."  Houghton v. South, 965, F.2d 1532, 1534 (9th Cir. 1992).

"[S]ection 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred."  Graham v. Connor, 490 U.S.

**ORDER  13**

386, 393-94 (1989).  Therefore, the Court will analyze the specific constitutional rights

Plaintiff alleges were violated by the Defendants.

      1.  Shower and phone call claims

      Plaintiff's original Complaint said he was not allowed to shower or make phone

calls for three months beginning in March 2006.  Defendants claims that was not the case

and submit the jail records to support Plaintiff's access to showers and phones.

      A long-term deprivation of showers can constitute an Eighth Amendment violation

if it is the result of deliberate indifference.  See Matthews v. Peters, 818 F.Supp. 224, 228

n. 6 (D. Ill.1993) (deprivation of hot water for showers).

      Restrictions on a detainee's telephone privileges that prevented him from

contacting his attorney in his criminal matter, and which are not for security or other

legitimate reasons, can violate the Sixth Amendment right to counsel.  Tucker v. Randall,

948 F.2d 388, 390-91 (7th Cir. 1991); Martin v. Tyson, 845 F.2d 1451, 1458 (7th

Cir.1988), cert. denied, 488 U.S. 863, 109 S.Ct. 162 (1988).

      In general, unreasonable restrictions on prisoner's telephone access may also

violate the First and Fourteenth Amendments.  See Strandberg v. City of Helena, 791

F.2d 744, 747 (9th Cir. 1986);  Feeley v. Sampson, 570 F.2d 364, 374 (1st Cir. 1978).

This right is "subject to rational limitations in the face of legitimate security interests of

the penal institution." Hutchings v. Corum, 501 F.Supp. 1276, 1296 (W.D.Mo.1980)

(citing  Bell v. Wolfish, 441 U.S. 520 (1979)).

      In this case, it is undisputed that Plaintiff was housed in the general population

**ORDER  14**

cells until April 23, 2006 and in the general population cells the inmates have access to showers and a phone readily available.

To the extent Plaintiff claims he was not allowed shower or phone access from April 23, 2006 to his transfer in June 5, 2006, again the jail records do not establish there is a genuine issue of material fact regarding this claim.  While in cell C-1, the jail had regular times where inmates were allowed showers and phone access in the common day room.  Plaintiff has provided no evidence that he was in any way prevented access to the showers or phone during his time in cell C-1.  Nor has Plaintiff provided any evidence that the jail's records about where he was housed are inaccurate.

As to Plaintiff's time in segregation[3] in cell C-3, the jail policy allowed one hour a day for the inmates to have access to the "library" for shower and phone access.  While an inmate could not be forced to shower or use the phone or leave his cell, the jail records reflect that Plaintiff regularly left his cell and had access to the "library."   While it is true Plaintiff did not leave his cell every day he was housed in cell C-3, the records reflect he left regularly and had the option to shower and use the phone.  Additionally, Plaintiff does not deny his attorney visited him while he was housed in cell C-3.

In response to the motion for summary judgment and the various jail documents showing Plaintiff had access to the shower and phone in the library, Plaintiff responds that the records are inaccurate and have been created after the fact as a cover-up.  Plaintiff

---

[3]Plaintiff does not contest the facts that he was placed in segregation after numerous altercations with other inmates.

**ORDER  15**

offers no evidence (such as a personal daily journal, affidavits of other inmates, etc.) to corroborate his conclusory allegations.  Pursuant to Fed. R. Civ. P. 56(e): " When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of  the adverse party's pleading. . . ."  In re Rogstad, 126 F.3d 1224, 1227-28 (9th Cir. 1997).  Specific facts must be set forth instead of merely alleging the documents have been falsely created.  See Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 585-88 (1986); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir.1995).  Therefore, Plaintiff's conclusory denials of the Defendants' evidence without more do not create a genuine issue of fact and Defendants are entitled to summary judgment on Plaintiff's claim he was denied access to the showers and phone.

   2. Noisy inmate claims

   Plaintiff specifically claims the noise and rage of inmate Kelly Rausch gave him a headache and hurt his ears.  The record of void of any complaints regarding noise by other inmates and the jail records do not reflect a Kelly Rausch being held while Plaintiff was housed in cell C-3.  Plaintiff does not offer the name of any other inmate who's noise bothered him and does not claim he filed a complaint regarding the noise.  Moreover, noise in the cells, while it may be irritating, does not rise to the level of cruel and unusual punishment.  See Peterkin v. Jeffes, 855 F.2d 1021, 1027 (3rd Cir. 1988).  Therefore, there are no genuine issues of material fact and summary judgment should be granted in Defendants' favor on this claim.

**ORDER  16**

D.  Paper and Pencil claims

As previously discussed, the jail records establish by Plaintiff's own signature that Plaintiff was provided pencils, paper and envelopes when he was determined to be indigent (not sufficient funds in his prison account) and when he filled out the form for such items.  Therefore, there is no genuine issue of material fact and summary judgment should be granted in Defendants' favor.

E.  Medical Care Claim

Plaintiff asserts that Defendants have violated his Eighth Amendment right to have adequate medical care at the jail.  Specifically, Plaintiff claims he was not provided adequate medical care for his ears.

In the Ninth Circuit, the test for deliberate indifference to medical needs consists of two parts. McGuckin v. Smith, 974 F.2d 1050 (9th Cir.1991), overruled on other grounds by WMX Techs., Inc. v.  Miller, 104 F.3d 1133 (9th Cir.1997) (en banc). First, the plaintiff must show a "serious medical need" by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.' " Id. at 1059 (citing Estelle, 429 U.S. at 104). Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. Id. at 1060. This second prong-defendant's response to the need was deliberately indifferent-is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Id.  Indifference "may appear when prison officials deny, delay or intentionally interfere with medical

**ORDER  17**

treatment, or it may be shown by the way in which prison physicians provide medical care." Id. at 1059 (quoting Hutchinson v. United States, 838 F.2d 390, 392 (9th Cir.1988)). Yet, an "inadvertent [or negligent] failure to provide adequate medical care" alone does not state a claim under § 1983.  Id. (citing Estelle, 429 U.S. at 105). A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs. Id. at 1060. If the harm is an "isolated exception" to the defendant's "overall treatment of the prisoner [it] ordinarily militates against a finding of deliberate indifference." Id. (citations omitted).

Plaintiff must also demonstrate either that each Defendant personally participated in the decisions regarding Plaintiff's medical care, or that, as a supervisor, he or she directed, or knew of and failed to prevent, the actions causing Plaintiff's damages or injuries.  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  There is no respondeat superior liability under § 1983.  Id.

In this case, the Defendants argue that Plaintiff was provided medical care for his ears. The medical records reflect a request was made and Plaintiff was seen by the registered nurse who recommended antibiotics for his ear.  The antibiotics were provided by the jail personnel until Plaintiff was transferred to the Idaho Department of Corrections.  At that point, Plaintiff received additional medical care regarding his ear complaints.

Plaintiff does not name as defendants the medical personnel that treated him at

**ORDER  18**

Latah County Jail and has not presented any facts that any of the named Defendants prevented him from receiving medical care.  While there was a slight delay in the request for medical treatment and the prescription for the antibiotic, a slight delay does not rise to the level of a constitutional violation.  Mere indifference, medical malpractice, or negligence will not support a cause of action under the Eighth Amendment.  Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980).  A mere delay in treatment does not constitute a violation of the Eighth Amendment, unless the delay causes serious harm. Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990).  The Ninth Circuit has clarified that if medical personnel have been "consistently responsive to [the inmate's] medical needs," and there has been no showing that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," there is no Eighth Amendment violation.  Toguchi v. Chung, 391 F.3d 1051, 1061 (9th Cir. 2004).  Therefore, the facts presented by Plaintiff do not rise to a constitutional violation.

Plaintiff argues that the jail violated its policy of having a doctor available 24 hours a day. The policy of having a doctor on call for the jail, does not mean an inmate has a right to see a doctor any time of day.  The medical complaints are screened by nurses serving the jail.  Plaintiff does not have the right to dictate the type of care provided.  Plaintiff has not established that the antibiotic course of treatment determined by the nurse was inappropriate to his condition.  Differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and

**ORDER  19**

treatment are not enough to establish a deliberate indifference claim.  See Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).  "[T]o prevail on a claim involving choices between alternative courses of treatment, [Plaintiff] must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk'" to Plaintiff's health.  Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004) (quoting Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)).

In examining the evidence before the Court, the Plaintiff has not created a genuine issue of material fact regarding his medical care.  The facts taken in a light most favorable to Plaintiff, do not rise to the level of deliberate indifference as Plaintiff has failed to present any evidence that his medical condition was serious and that the Defendants took actions to avoid the Plaintiff receiving medical care or that any alleged delay caused harm to the Plaintiff.  Moreover, Plaintiff has failed to file any claims against the medical providers for violating his Eighth Amendment rights so any claim that the treatment received was inadequate has not been filed against the proper Defendants.  Simply put, the Plaintiff's facts do not establish the jail officers were deliberately indifferent to Plaintiff's medical needs regarding his ear and such claims should be dismissed.

F.  Cleaner and Respiratory Claim

Plaintiff claims the disinfectant he was provided to clean his cell caused him to have a respiratory irritation as his cell was not well-ventilated.  No medical complaints were filed regarding the alleged respiratory irritation.  The medical records from the

**ORDER  20**

Idaho Department of Corrections do not indicate any respiratory problems when he was transferred to their custody.  Defendants respond that the cleaner is diluted and very mild to avoid a risk to inmates who may seek to harm themselves.  Additionally, the Defendants maintain the cells have adequate ventilation via the central heating and cooling system.

Assuming Plaintiff was bothered by the cleaning fluids, he failed to exhaust his administrative remedies and there is no evidence the limited exposure to the cleaning solution created a serious medical situation for the Plaintiff.   Finally, the nature of this isolated incident does not rise to the level of deliberate indifference.  See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990); Toussaint v. McCarthy, 801 F.2d 1080,1111, (9th Cir. 1986).   The Court finds this incident alone is insufficient to establish a claim for cruel and unusual punishment.

4. Conclusion

For purposes of the motion for summary judgment, the Court finds there are no genuine issues of material fact that prevent summary judgment from being granted in Defendants' favor on all claims.  Having found no constitutional violations, the Court need not continue with any further qualified immunity analysis.

**Other Motions**

Having found the motion for summary judgment dispositive, the Court finds the remaining motions are moot and need not be addressed in detail by the Court.

**ORDER  21**

## Order

Being fully advised in the premises, the Court hereby orders that:

1) Plaintiff's Motion for Protective Order (Docket No. 54) is DENIED AS MOOT;

2) Defendants' Motion for Release of Medical Records from Idaho Department of Corrections (Docket No. 56) is DENIED AS MOOT as the medical records of the Idaho Department of Corrections are not necessary to decide the pending motion for summary judgment and/or have been provided in Plaintiff's responses to motion for summary judgment;

3) Defendants' Second Motion to Modify Pretrial Scheduling Order (Docket No. 58) is DENIED AS MOOT;

4) Plaintiff's Motion to Continue (Docket No. 60) is DENIED AS MOOT as Plaintiff has already filed a response to the motion for summary judgment;

5) Defendants' Motion for Summary Judgment (Docket No. 62) is GRANTED and all Plaintiff's claims are DISMISSED IN THEIR ENTIRETY;

6) Plaintiff's Motion for Extension of Time to File (Docket No. 64) is DENIED AS MOOT as Plaintiff already filed a response to the motion for summary judgment as well as a sur-reply.

DATED:  **October 8, 2009**

Honorable Edward J. Lodge
U. S. District Judge

**ORDER  22**